**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| FIRSTBANK SOUTHWEST, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | Civil Action No. 2:21-cv-00024-Z |
| | § | |
| HEARTLAND FINANCIAL USA, INC. | § | |
| d/b/a FIRSTBANK & TRUST, and | § | |
| FIRSTBANK & TRUST TEXAS, | § | |
| | § | |
| DEFENDANTS. | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

FirstBank Southwest, Plaintiff, ("FBSW" or "Plaintiff") files this First Amended Complaint against Heartland Financial USA, Inc. ("Heartland") and FirstBank & Trust Texas ("FBT"), and would show the Court as follows:

## I.
### PARTIES

1.      FirstBank Southwest is a state banking association located in the Texas Panhandle with its principal office in Amarillo, Texas.

2.      Heartland Financial USA, Inc. d/b/a FirstBank & Trust is a Foreign For-Profit Corporation with its principal office in Dubuque, Iowa.  Heartland has been served with process and filed an answer.

3.      FirstBank & Trust Texas ("FBT") is a Texas state banking association with its principal place of business at 9816 Slide Road, Lubbock, Texas 79424. FBT may be served by serving its registered agent, Barry Orr at 9816 Slide Road, Lubbock, Texas 79424.

## II.
### JURISDICTION

4.      This action was originally filed in Texas state district court in and for Randall County, Texas, and was removed to this Court by Heartland. This action involves claims for unfair

competition in violation of the *Lanham Act*, 15 U.S.C. §1125, common law trademark infringement, common law unfair competition. This Court has jurisdiction over this lawsuit under 28 U.S.C. §§ 1331 & 1338.

## III.
### VENUE

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred, in the Northern District of Texas, Amarillo Division. In particular, the Defendants adopted and use several infringing service marks in and around Amarillo, Texas.

6.      There is a substantial connection between Heartland and the State of Texas arising from Heartland's purposeful actions, including the willful and intentional infringement of FBSW's trademarks in FBSW's service area within the State of Texas.  FBSW's causes of action for damages arise out of Heartland's willful and intentional actions, which occurred in the State of Texas.  Heartland established minimum contacts with the State of Texas by acquiring banks located within the State of Texas and rebranding the banks so as to infringe on FBSW's trademarks within FBSW's service area.  The Court's exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice because Heartland has purposefully availed itself of the benefits and protections of the laws of the State of Texas.

7.      The Court has personal jurisdiction over FBT because FBT is headquartered in Texas and conducts business substantially exclusively in Texas. Moreover, FBT's infringing activities, as described herein, occurred in Texas.

## IV.
### FACTUAL BACKGROUND

8.      FBSW has been offering banking and trust services to customers in the Texas Panhandle for over 100 years.  Plaintiff was originally chartered as First National Bank of Ochiltree in 1907, and later changed its name to First National Bank of Perryton when the Santa Fe Railway announced a line expansion from Shattuck, Oklahoma to Spearman, Texas.  Carl Ellis bought a

controlling interest in the bank in 1934, and a member of the Ellis family has been involved in the bank's leadership ever since. The bank expanded into Amarillo with its purchase of the Texas Commerce Bank. FBSW later adopted the name FirstBank Southwest on or around 1995. Around that time, FBSW adopted a composite mark, which consists of a green tree and the name FIRSTBANK SOUTHWEST to the right of the tree in green printed script:



The name FIRSTBANK SOUTHWEST and the composite mark are collectively referred to as the "FBSW Marks." FBSW's use of the FBSW Marks in the Texas Panhandle since 1995 has been substantially exclusive and continuous.

9.      FBSW's use of the FBSW Marks is eligible for Texas common law protection in the Texas Panhandle. In particular, the FBSW Marks are inherently distinctive because they contain elements that do more than merely describe a quality or characteristic of FBSW's banking and trust services. Additionally--and as demonstrated below—the FBSW Marks have acquired a secondary meaning for the consuming public for banking and trust services in the Texas Panhandle. That is, banking customers in the Texas Panhandle associate the FBSW Marks with a single source, Plaintiff.

10.      FBSW currently has nine banking center locations in Amarillo, Booker, Hereford, Pampa, and Perryton and serves customers that live throughout the Texas Panhandle, consisting of the northernmost 26 counties in the State of Texas. FBSW has developed strong trademark rights in the FBSW Marks, and has used the FBSW Marks throughout the Texas Panhandle. FBSW has extensively used and expended substantial efforts in promoting, advertising, and supporting the community under the FBSW Marks throughout the Texas Panhandle since 1995.

FBSW prominently displays the FBSW Marks at all FBSW banking centers. FBSW has been recognized as a leader in its community, including being the recipient of the Independent Bankers Association of Texas's Best of Community Banking Award, the 2020 American Banker "Best Banks to Work For" award, and the Texas Rain Catcher Award.

11.     FBSW actively supports its community, including partnering with the Amarillo Area Foundation for the #ThePanhandleGives event, which is nationally known as GivingTuesday. Additionally, FBSW donates to area schools through a School Spirit Card Program, in which FBSW donates a portion of each debit card transaction processed to each school district participating in the program.  The debit cards prominently display the FBSW Marks.  Various press releases reflecting FBSW's involvement in the community are attached as Exhibit 1. As a result, customers associate the FBSW Marks with FBSW's superior banking and trust services. The FBSW Marks are highly valuable assets and symbolize FBSW's goodwill.

12.     FBSW's long and extensive use of the FBSW Marks have resulted in the FBSW's Marks acquiring secondary meaning within the Texas Panhandle. FBSW holds several valid, enforceable trademarks and service marks under Texas common law in the Texas Panhandle.

13.     Heartland Financial USA, Inc. ("Heartland") is a financial services company based in Dubuque, Iowa, that owns several community banks and banking centers under different brands. FirstBank & Trust ("FBT") is a wholly owned subsidiary of Heartland and one of the many banks that compose The Heartland Group.[1] FBT's principal office is in Lubbock, Texas. Heartland and



FBT use the name FIRSTBANK & TRUST and the composite marks (

---

[1] On May 18, 2018, Heartland filed a certificate of merger with the Office of the Secretary of the State of Texas, wherein Heartland announced its merger with First Bank Lubbock Bancshares, Inc., which identified Heartland "as the surviving corporation."

and _____ ) (collectively referred to as the "Infringing Marks") in connection with advertising and promotion of their banking and trust services.

14.     AimBank operated two locations in the Texas Panhandle—one in Amarillo and another in Pampa.  AimBank used a composite mark consisting of a black bullseye accompanied by the name AimBank extending from the center and top right of the bullseye in red printed script. AimBank's prior composite mark was dissimilar to FBSW's Marks. Although competitors offering the same or nearly the same services, FBSW and AimBank co-existed with banking locations in both Amarillo and Pampa without known customer confusion for years.

15.     In 2020, Heartland announced its plans to acquire AIM Bancshares, Inc. ("AimBank").   On December 7, 2020, Heartland announced that it completed the acquisition of AimBank and that AimBank merged with and into FBT.

16.     On December 7, 2020, Heartland issued a press release entitled "HEARTLAND COMPLETES ACQUISITION OF AIMBANK IN TEXAS." According to Heartland's press release , "Heartland . . . announced today the completion of its acquisition of AimBank . . ."  The press release continued, stating "[t]he combined bank will operate under the name FirstBank & Trust." Heartland's Executive Operating Chairman, Lynn B. Fuller, is quoted stating: "We are excited to expand our presence in Texas and New Mexico."  Heartland's President and Chief Executive Offer added: "We are excited to welcome the customers and employees of AimBank" and that the combination "will create additional value for our shareholders." Heartland went on to boast about the amount of assets and full service banking locations it had following the AimBank acquisition. Heartland also announced that it was changing the AimBank name and logo, making the marks strikingly similar to the FBSW Marks. The announcement included a graphic which displayed the before and after marks:



17.     FBT is prominently listed as part of "The Heartland Group" on Heartland's website.

18.     On June 26, 2020, FBSW sent Heartland and FBT a letter, outlining the confusion that would inevitably result from rebranding AimBank and using the Infringing Marks within FBSW's service area.  FBSW informed Heartland and FBT that a cursory review of the marks reveals striking similarities, including the fact that both marks bear similar fonts, color schemes, capitalization, and the name "FirstBank."  Combine the similarities with the overlap in services, including the fact that FBSW provides trust services throughout its service area, and confusion among consumers was inevitable. FBSW also notified Heartland and FBT that the rebranding would constitute infringement on FBSW's marks because there is a likelihood of confusion between the FBSW Marks and the Infringing Marks.  Despite the early warning letter, Heartland and FBT willfully proceeded to adopt marks, which infringe the FBSW Marks..

19.     Additionally, following Heartland and FBT's willful adoption of the Infringing Marks, there has been actual customer confusion between the FBSW Marks and the Infringing Marks.  Although not exhaustive, the following are instances of actual customer confusion resulting from the use of Infringing Marks:

    a.  On or about January 20, 2021, a customer reported to FBSW that he received a new fee schedule. The new fee schedule was not for FBSW, but instead was a fee schedule sent by FBT.

    b.  On or around January 29, 2021, a customer attempted to deposit a check at the FBSW mobile banking center in Pampa, Texas to deposit a check. The attempted deposit was for an FBT account.  When informed of the mistake, the

customer remarked "Isn't this FirstBank and Trust?"

    c.   On or around February 8, 2021, a customer attempted to deposit a check at the FBSW banking center.  The attempted deposit was for an FBT account.

    d.   On or around February 22, 2021, FBSW employee Donna Crawford received a call from a customer asking if FBSW was the bank that purchased AimBank, and commented that the logos were confusing.

    e.   On or around February 21, 2021, FBSW received a call from an Edward Jones client that was attempting to wire money for a client.  However, the clients were customers of FBT, and not FBSW.

Other instances of actual customer confusion between the FBSW Marks and the Infringing Marks occur and continue to occur.

20.    As of this filing, Heartland and FBT's use the Infringing Marks within the Texas Panhandle in connection with banking services.  Heartland and FBT's use of the Infringing Marks in connection with banking services in the Texas Panhandle creates a likelihood of confusion and causes irreparable harm to FBSW's trademark rights.

21.    Because a likelihood of confusion exists between the Parties' marks, injury to Plaintiff's reputation and goodwill is presumed.

22.    After Plaintiff's attempts to resolve this matter failed, Plaintiff filed the underlying lawsuit.

## Effects of Defendants' Unlawful Activities

23.    Defendants' unauthorized use and intended use of the Infringing Marks are likely to confuse consumers. Consumers are likely to perceive some connection or association between the parties' products as to source, sponsorship, or affiliation, when in fact none exists.

24.    Defendants' unauthorized use and intended use of the Infringing Marks falsely designate the origin of Defendants' services and falsely represent facts with respect to those services.

25.     Defendants' unauthorized use and intended use of the Infringing Marks enable Defendants to trade off and receive the benefit of the goodwill built by Plaintiff in its FBSW Marks.

26.     Defendants' unauthorized use and intended use of the Infringing Marks effectively remove Plaintiff's ability to control the quality of the services offered under the FBSW Marks. This places Plaintiff's reputation and goodwill at least partially in the hands of Defendants, whose services Plaintiff cannot control.

**V.**
**CAUSES OF ACTION**

*COUNT 1*
*VIOLATION OF THE LANHAM ACT*

27.     Each of the preceding paragraphs is incorporated by reference under this count.

28.     FBSW provides banking and trust services under the FBSW Marks. FBSW uses the FBSW Marks in commerce by providing its banking and trust services to a variety of purchasers, including individuals and businesses. FBSW further promotes the FBSW Marks and banking and trust services using the internet: using and updating a website; multiple social media accounts; etc.

29.     Defendants' use of the Infringing Marks is likely to cause confusion, or to cause mistake, or to deceive as to the (1) affiliation, connection or association of Defendants with FBSW or (2) as to the origin, sponsorship or approval of Defendants' services by FBSW.

30.     The uses by Defendants as complained of herein constitute unfair competition, are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants' banking and trust services with FBSW beer in violation of the *Lanham Act,* 15 U.S.C. §1125 (a)(1)(A).

31.     Defendants' acts described herein further constitute false or misleading descriptions and/or representations of fact which, in commercial advertising or promotion,

misrepresent the nature, characteristics, and qualities of its services in violation of the *Lanham Act,* 15 U.S.C. §1125 (a)(1)(B).

32.     Defendants' acts described herein further constitute a bad faith intent to profit from the FBSW Marks in violation of the *Lanham Act,* 15 U.S.C. §1125(d)(1)(A).

33.     Defendants' acts have and will continue to cause FBSW irreparable injury and based upon information and belief, Defendants will continue their acts of unfair competition unless enjoined by this Court. Pursuant to 15 U.S.C. §1116, FBSW seeks both preliminary and permanent injunctive relief against further acts of unfair competition by Defendants.

34.     Defendants' acts of unfair competition and false designation of origin have caused actual confusion and a likelihood of confusion with FBSW. Injury to FBSW's reputation and goodwill is therefore presumed. Pursuant to 15 U.S.C. §1117(a), FBSW is entitled to and seeks Defendants' profits, and costs of this action and such additional relief as may be deemed appropriate and awarded by this Court.

35.     Defendants' acts of unfair competition and false designation of origin have been and continue to be deliberate and willful and warrant an award of enhanced damages.  In addition, FBSW is entitled to and seeks a finding that this case is exceptional and warrants an award of attorneys' fees pursuant to 15 U.S.C. §1117(a).

*COUNT 2*
*COMMON LAW TRADEMARK INFRINGEMENT*

36.     Each of the preceding paragraphs is incorporated by reference under this count.

37.     Plaintiff enjoys common law trademark rights under the common law of the State of Texas in connection with its service marks and trademarks to identify, in the State of Texas, its goods and services. For example, Plaintiff owns and uses several FBSW Marks to promote its banking and trust services.

38.     Defendants' past and current use of the Infringing Marks constitutes trademark infringement under the laws of the State of Texas.

39.     Defendants' acts further constitute a willful attempt to profit from Plaintiff's FBSW Marks in violation of its trademark rights.

40.     The offering by Defendants of their banking and trust services using confusingly similar marks is likely to cause and has caused confusion as to the source of origin of the banking and trust services in that purchasers of Plaintiff's banking and trust services are likely to associate or have associated such banking and trust services as originating with Defendants—and *vice versa*—all to the detriment of Plaintiff.

41.     Defendants' acts of common law trademark infringement have caused actual confusion and a likelihood of confusion with Plaintiff. Injury to Plaintiff's reputation and goodwill is therefore presumed. Defendants' acts have and will continue to cause Plaintiff irreparable injury and based upon information and belief, Defendants will continue their willful acts of trademark infringement unless enjoined by this Court. Plaintiff seeks both preliminary and permanent injunctive relief against further acts of trademark infringement by Defendants.

42.     Plaintiff also seeks recovery of Defendants' profits and Plaintiff's attorney's fees.

### *COUNT 3*
### *COMMON LAW UNFAIR COMPETITION*

43.     Each of the preceding paragraphs is incorporated by reference under this count.

44.     Defendants' conduct have and is likely to confuse, mislead, or deceive purchasers or potential purchasers and constitutes unfair competition under the laws of the State of Texas.

45.     Defendants' acts of common law unfair competition have caused actual confusion and a likelihood of confusion with Plaintiff. Injury to Plaintiff's reputation and goodwill is therefore presumed. Defendants' acts have and will continue to cause Plaintiff irreparable injury

and based on information and belief, Defendants will continue their willful acts of unfair competition unless enjoined by this Court. Plaintiff seeks both preliminary and permanent injunctive relief against further acts of unfair competition by Defendants'.

46.     Plaintiff also seeks recovery of Defendants' profits and Plaintiff's attorney's fees.

*COUNT 4*
*UNJUST ENRICHMENT*

47.     Each of the preceding paragraphs is incorporated by reference under this count.

48.     Defendants' actions have unjustly enriched it at the expense of Plaintiff.

49.     By using the Infringing Marks without Plaintiff's authorization, Defendants have obtained a benefit to which they is not legally entitled.

50.     Defendants are thus liable for unjust enrichment in violation of Texas common law.

*COUNT 5*
*DECLARATORY JUDGMENT*

51.     Each of the preceding paragraphs is incorporated by reference under this count.

52.     Defendants' challenge to Plaintiff's exclusive rights to the FBSW Marks gives rise to an actual controversy. By virtue of Defendants' refusal to cease and desist using the Infringing Marks in connection with banking and trust services, Defendants have claimed ownership of the relevant marks in contravention of Plaintiff's rights.

53.     Plaintiff's ownership of the FBSW Marks goes back more than twenty-five years. Defendants, by contrast, started using the Infringing Marks in the Texas Panhandle long after Plaintiff. Thus, Defendants are junior users to marks confusingly similar to the FBSW Marks.

54.     Declaratory relief is necessary in order to clarify and settle Plaintiff's rights regarding the FBSW Marks, and to relieve Plaintiff from the uncertainty, insecurity and controversy created by Defendants' actions and assertions.

55.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§2201 and 2202, Plaintiff seeks a declaration by the Court that Plaintiff is the owner of the FBSW Marks and has the right to exclusively use the FBSW Marks, and that Defendants have no right to use any of the FBSW Marks, Infringing Marks, or similar variations.

## COUNT 6
## CORPORATE PARENT LIABILITY

56.     Each of the preceding paragraphs is incorporated by reference under this count.

57.     As discussed, Heartland has used and continues to use the Infringing Marks such that a likelihood of confusion occurs with the FBSW Marks. Accordingly, and to reiterate, Heartland is directly liable for each of the counts 1–5 set forth above.

58.     In addition to using the Infringing Marks directly, Heartland's activities as a corporate parent are more than sufficient to establish liability indirectly. Heartland exercised complete control over the tortious activities committed by its subsidiary FBT and is thus liable alongside FBT.

59.     Heartland issued a press release announcing the completion of its acquisition of AimBank, and stated that "[t]he combined bank will operate under the name FirstBank & Trust." Heartland's executives have repeatedly touted that Heartland is excited to expand its presence in Texas and New Mexico, and that Heartland is excited to welcome the customers and employees of AimBank, which will create additional value for Heartland's shareholders. Heartland also unequivocally announced that Heartland was changing the AimBank name and logo to the Infringing Marks. Moreover, the Infringing Marks are prominently listed as part of "The Heartland Group" on Heartland's website.

60.     Heartland committed each of these acts knowing of FBSW's prior and superior rights to the FBSW Marks in the Texas Panhandle. Heartland is also aware that these actions have

resulted in irreparable harm to Plaintiff. Accordingly, Heartland is further liable in its capacity as FBT's parent corporation.

61.     Plaintiff seeks both preliminary and permanent injunctive relief against further acts of trademark infringement and unfair competition by Heartland.

62.     Plaintiff also seeks recovery of Heartland's profits and Plaintiff's attorney's fees.

## VI.
## INJUNCTIVE RELIEF

63.     The factual allegations in the preceding paragraphs are incorporated herein by reference.

64.     Unless the Defendants are enjoined from the acts complained of, Plaintiff and the public will suffer irreparable harm, for which Plaintiff has no adequate remedy at law.   The Plaintiff is entitled to an injunction, prohibiting the Defendants from using the Infringing Marks, as defined above, or any similar marks, in connection with banking services, including business lending and deposit services, mortgage services, treasury management, trust services, and card services to individuals and businesses in the Texas Panhandle.

## VII.
## CONDITIONS PRECEDENT

65.     The conditions precedent to the recovery of Plaintiff's claims under all counts have been satisfied.

## VIII.
## PRAYER

For the reasons stated above, Plaintiff prays that Defendants be cited to appear and answer herein, and upon final hearing in this cause, that the Court enter a judgment against Defendants granting Plaintiff the following relief:

1.     Defendants and their owners, officers, agents, servants, affiliates, employees,

attorneys and representatives and all those in privy or active concert with Defendants, or on behalf of Defendants, be preliminarily and permanently enjoined and restrained from, directly or indirectly:

    a.  Using any of the Infringing Marks or any other names or marks similar thereto;

    b.  Creating any confusion with Plaintiff's FBSW Marks;

    c.  Advertising the Infringing Marks;

    d.  Otherwise unfairly competing with Plaintiff in any manner;

    e.  Causing confusion or the likelihood of confusion, mistake or deception between Plaintiff and Defendants;

2.    Declaring that Plaintiff be entitled to the exclusive use of the FBSW Marks and that Defendants have no right(s) to continued use of the Infringing Marks;

3.    Ordering Defendants to pay Plaintiff Defendants' profits pursuant to 15 U.S.C. § 1117(a) as a result of Defendants' conduct described herein;

4.    Awarding Plaintiff prejudgment and post-judgment interest;

5.    Awarding Plaintiff exemplary damages;

6.    Awarding Plaintiff enhanced damages, attorneys' fees, and costs of court as the result of Defendants' acts of trademark infringement and unfair competition that were deliberate and willful, and because this is an exceptional case;

7.    Ordering Defendants to pay Plaintiff's attorneys' fees and costs in connection with this suit under Federal Rule of Civil Procedure 57 and 28 U.S.C. §§2201 and 2202; and

8.    Awarding Plaintiff such other relief as the Court deems proper.

Respectfully submitted,

SPROUSE SHRADER SMITH PLLC
Tim Williams, SBN 24067940
Email: tim.williams@sprouselaw.com
Physical: 701 S. Taylor, Suite 500 (79101)
Mailing: P.O. Box 15008
Amarillo, Texas 79105-5008
Tel: (806) 468-3300; Fax: (806) 373-3454

By:    /s/ *Timothy C. Williams*
       Timothy C. Williams

and

GUNN, LEE & CAVE, P.C.
Nick Guinn, SBN 24087642
Email: nick@gunn-lee.com
8023 Vantage Drive, Suite 1500
San Antonio, Texas 78230
Tel: (210) 886-9500; Fax: (210) 886-9883

*Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

The undersigned counsel certifies that the foregoing pleading has been served *via* ECF on this the 9th day of March 2021, to the following:

Craig B. Florence
Abigail K. Drake
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201

Terrell R. Miller
Foley & Lardner LLP
1000 Louisiana Street, Suite 2000
Houston, Texas 77002


/s/ *Timothy C. Williams*
Timothy C. Williams