IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| FIRSTBANK SOUTHWEST, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:21-CV-024-Z |
| | § | |
| HEARTLAND FINANCIAL USA, | § | |
| INC. d/b/a FIRSTBANK & TRUST, | § | |
| and FIRSTBANK & TRUST TEXAS | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's Motion and Supporting Brief for Preliminary Injunction (ECF No. 19), filed April 15, 2021. By this Motion, Plaintiff moves the Court to preliminarily enjoin Defendants from using or advertising under the allegedly infringing marks. Defendants jointly filed a Response on June 11, 2021. ECF No. 33. Plaintiff's Reply was filed June 18, 2021. ECF No. 34. Pursuant to this Court's Order (ECF No. 36), Plaintiff submitted a Supplemental Brief filed June 27, 2021, ECF No. 40, and Defendants submitted a Supplemental Briefing. ECF No. 39). Based on the pleadings and the Court's review of relevant law, Plaintiff's request for a preliminary injunction is **DENIED** for the reasons set forth below.

**BACKGROUND**

Since 1995, Plaintiff has operated banks in the Texas Panhandle.[1] In 2005, Plaintiff rechartered, but kept the primary portion of its name, which persists today: FirstBank Southwest.[2]

---

[1] ECF No. 19-2, Ex. E, App. 18.
[2] Ex. E, App. 18.

Since that time, Plaintiff has worked to establish itself as a staple financial institution in the Texas Panhandle, operating 9 locations[3] and winning awards for their banking services and workplace.[4]

In December of 2020, Defendants merged with a small banking institution, AimBank, and rebranded the two acquired locations under the FirstBank & Trust name and logo.[5] Prior to this acquisition, FirstBank & Trust operated seven locations in Texas.[6] This merger with AimBank increased Defendants' bank's presence in the Texas Panhandle which Plaintiff sees as its "service area."[7]

In anticipation of this merger, Plaintiff sent Defendants a letter, explaining their belief that the parties' marks were similar and that confusion would result from rebranding the Aimbank locations to FirstBank & Trust.[8] Six months after this letter was sent, Defendant Heartland officially announced the acquisition of AimBank and the rebrand to FirstBank & Trust, along with the marks.[9] Plaintiff seeks to enjoin Defendants' use of the marks for unfair competition under the Lanham Act and Texas common law, as well as trademark infringement under Texas common law.[10]

 

---

[3] Ex. E, App. 18; Ex. A, App. 3.
[4] Ex. F, App. 20-25; Ex. G, App. 27-28; Ex. H, App. 30; Ex. A, App. 3
[5] Ex. 2, App. 10; Ex. AA, App. 80.
[6] *Id.*
[7] Plaintiff's Motion at 3.
[8] Ex. B, App. 8-9.
[9] Ex. S, App. 58-60.
[10] Plaintiff's Motion at 4.

**LEGAL STANDARD**

Even though a district court has discretionary power to issue a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, the Supreme Court admonishes the courts to invoke this power sparingly and only in extraordinary circumstances. *Compare Trump v. International Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017), *with Sampson v. Murray*, 415 U.S. 61 (1974). Absent extenuating circumstances, no district court should issue a preliminary injunction unless one is necessary to protect the plaintiff from irreparable injury or to preserve the court's power to render a meaningful decision after a trial on the merits. *See Stacey G., by William and Jane G. v. Pasadena Indep. Sch. Dist.*, 695 F.2d 949, 955 (5th Cir. 1983); *Meis v. Sanitas Serv. Corp.*, 511 F.2d 655, 656 (5th Cir. 1975); *Hollon v. Mathis Indep. Sch. Dist.*, 491 F.2d 92 (5th Cir. 1974).

Even within this limited locus of action, a district court should grant preliminary injunctions only when the plaintiff establishes the following: (1) it is substantially likely to succeed on the merits of the underlying case; (2) it is substantially likely to suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs any harm that the injunction may occasion for the defendant; and (4) the injunction will not undermine the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997). These four factors are conjunctive — *i.e.*, the plaintiff must carry the burden as to all four factors before a preliminary injunction may be considered. *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013); *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195–96 (5th Cir. 2013).

ANALYSIS

When reviewing the law, facts, and arguments in this case, the Court applied the *Winter* criteria to split the preliminary injunction analysis into four elements. Here, Plaintiff must satisfy four elements in order to succeed on a motion as failure to succeed on *any* element automatically results in failure to succeed when *all* the elements are considered. *Voting for America, Inc.*, 732 F.3d at 386. After consideration of Plaintiff's Motion, the court **FINDS** that Plaintiff on the current record is not substantially likely to succeed on the merits of the case. The Court secondly **FINDS** that Plaintiff is not likely to suffer irreparable harm in the absence of a preliminary injunction. The Court third **FINDS** that the threatened injury does not outweigh the harm that the injunction may occasion for Defendants. The Court fourth **FINDS** an injunction would disserve the public interest. Because Plaintiff has not satisfied all four elements needed to succeed on a motion for preliminary injunction, the Court hereby invokes its discretion under Rule 65 of the Federal Rules of Civil Procedure to **DENY** Plaintiff's Motion.

**A. Substantial Likelihood of Success on the Merits**

As the parties acknowledge, both claims — unfair competition and trademark infringement — require substantially the same showings: that Plaintiff (1) has a valid trademark, (2) which is eligible for protection, and (3) the similarity of the marks used by the defendant is likely to confuse the public. *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532 (5th Cir. 2012).

*1. The validity of the trademark and eligibility for protection*

Not all categories of terms are equally eligible for trademark protection. "Arrayed in an ascending order roughly reflecting their eligibility to trademark status and degree of protection accorded, the categories of terms are (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful . . . ." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *see also Union*

*Nat. Bank of Texas, Laredo, Tex. v. Union Nat. Bank of Texas, Austin, Tex.*, 909 F.2d 839, 844 (5th Cir. 1990). In this case, the contested term is "FirstBank," as it is the common term of the marks used by both FirstBank Southwest and FirstBank & Trust.

While the demarcation of these categories is clear, compound words are somewhat difficult to categorize. The term "bank" is certainly generic as it refers to the class of which the services offered is a member. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) (finding generic marks are those that "refe[r] to the genus of which the particular product is a species."); *see also Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 241 (5th Cir. 2010) (finding generic terms are those which connote "the basic nature of articles or services rather than the more individualized characteristics of a particular product."). Generic terms — including the term bank — are "incapable of protection." *First Sav. Bank, F.S.B. v. First Bank System, Inc.*, 101 F.3d 645, 653–654 (10th Cir. 1996).

Conversely, the term "first" is descriptive as it conveys an attribute or quality of the corporation to which it is assigned.[11] *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009) (finding "a descriptive term provides an attribute or quality of a good."). "Descriptive terms may only be protected as trademark after proof of secondary meaning, whereas arbitrary or fanciful terms are protectable without proof of secondary meaning." *Union Nat. Bank of Texas*, 909 F.2d at 844.

The first question regarding eligibility is this: does the combination of the terms "First" and "Bank" into "FirstBank" create something more distinctive? The answer is no. The term "First Bank" was found by the 10th Circuit to be "weakly descriptive." *First Sav. Bank*, 101 F.3d at 654–655. The Court finds that removing the space between the terms does not alter its fundamental

---

[11] It is not precisely clear from the parties' briefs exactly what the term "first" says about each bank, but it is clear that both banks wished to communicate some level of primacy to the public, either of quality or chronologically.

nature that it "describes a bank first in time or quality." *Id.* Combining the two terms does not create a distinctive term from two non-distinctive terms. *See, e.g.*, *In re American Fertility Soc.*, 188 F.3d 1341, 1347 (Fed. Cir. 1999) (finding the compound word "SCREENWIPE" generic for trademark purposes because it was formed of two generic words).

It is essential to prevent descriptive terms from earning protection without proof of secondary meaning. It is undesirable to prevent an entrant from using a term simply because another has described his business similarly in the past. *Aluminum Fabricating Co. of Pittsburgh v. Season-All Window Corp.*, 259 F.2d 314, 317 (2d Cir. 1985). As Defendants indicate, "numerous entities" have described themselves as first in either time or quality.[12] Accordingly, the mark is not sufficiently distinctive for trademark infringement purposes *without* the marks having acquired secondary meaning.

> The 7-pronged test for demonstrating secondary meaning is well established:
>
> "(1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress [or mark]."
>
> *Amazing Spaces*, 608 F.3d at 248.

This is a holistic test, with no one factor either proving secondary meaning or being dispositive. *Id.* These factors are to be examined in combination to determine whether the necessary link between a mark and its owner exists in the minds of consumers. *Id.* In regards to these factors, Plaintiff has alleged (1) use of the FBSW Marks for more than 25 years; (2) strong volume of sales in the Texas Panhandle; (3) significant expenditures of time and money advertisement; (4) recognition in various publications and on social media platforms; (6) consumer testimony which indicates public recognition of FBSW; and (7) that Defendants had knowledge

---

[12] Defendants' Response at 11.

of FBSW before selecting their marks.[13] Plaintiff admits that a consumer survey has not been performed, but the absence of one is not fatal to their claim as this test is intended to be holistic. *See Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 795 (5th Cir. 1983), *abrogated on other grounds by KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004).

These facts do not support Plaintiff's claim that "FirstBank" has acquired secondary meaning apart from the entirety of their name: "FirstBank Southwest." At no point has Plaintiff claimed to have advertised and operated under any moniker but "FirstBank Southwest" or, colloquially, "FBSW." This is best demonstrated by the testimony Plaintiff provides to show direct consumer testimony: "when I tell someone from the Texas Panhandle that I work for 'FirstBank Southwest' or 'FBSW,' the person almost always knows who I work for."[14] This employee's testimony does not suggest that a customer would recognize the term "FirstBank" alone.

Even more poignantly, this testimony does not suggest a consumer would presume to be dealing with Plaintiff from seeing the term "FirstBank" alone. If Defendants had renamed their AimBank locations to "FirstBank Southwest" or "FBSW," then the facts as alleged could support a claim of infringement. But Plaintiff lacks the support necessary for the Court to find the term "FirstBank" alone identifies the services of Plaintiff in the minds of the public.

   2. *The similarity of the marks is unlikely to confuse the public*

The likelihood of confusion is evaluated through examining the eight "digits of confusion." *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 149 (5th Cir. 1985); *see also Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 325–331 (5th Cir. 2008). These digits are: (1) the strength of the plaintiff's mark; (2) the similarity between the two marks; (3) the similarity of the

---

[13] Plaintiff's Motion at 8–11.
[14] Ex. A, App. 3.

products or services; (4) the identity of the retail outlets and purchasers; (5) the similarity of advertising media used; (6) the defendant's intent; (7) any evidence of actual confusion; (8) the degree of care exercised by potential customers. *Id.* As with the test for secondary meaning, no one factor is dispositive and finding there is a likelihood of confusion does not even require a positive finding on a majority of these digits. *Conan Properties*, 752 F.2d at 150.

Simply by the nature of the parties engaging in the same industry, two of the digits will inherently weigh in Plaintiff's favor — the third and fifth digits. The products and services are similar, if not identical. And advertising is conducted through similar channels. In a holistic weighing of the digits, these elements bear little weight as the same can be said of most financial institutions, regardless of name.

Conversely, several of the digits weigh heavily in Defendants' favor. The first digit: the strength of the trademark. This digit refers to the mark's distinctiveness and secondary meaning — *i.e.*, its recognition in the marketplace. *Am. Rice*, 518 F.3d at 330. Distinctiveness refers to the spectrum of — listed in order of increasing strength — generic, descriptive, suggestive, or arbitrary and fanciful. *Id.* As previously established, this mark is, at best, weakly descriptive, and is not greatly distinctive as a suggestive or arbitrary and fanciful mark would be. Granted, a descriptive mark can become distinctive *if* it has obtained secondary meaning or recognition in the marketplace, but Plaintiff's allegations fail to show such a finding for the infringed term and mark. *See generally Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005).

The Court is further persuaded by the reasoning adopted by the Tenth Circuit in *First Sav. Bank*, 101 F.3d at 653–655, by the 5th Circuit in *Sun Banks of Fla., Inc. v. Sun Fed. Sav. and Loan Ass'n*, 651 F.2d 311, 316–317 (5th Cir. 2001), and also as applied in *Citizens Nat'l Bank of Meridian v. Citizens Bank of Philadelphia*, 157 F. Supp. 2d 713, 716–722 (S.D. Miss. 2001).

"Extensive third-party use of [a] disputed term indicates the term itself deserves only weak protection." *First Sav. Bank*, 101 F.3d at 654.

Defendants ask the Court to take judicial notice of four other financial institutions in the contested area — First Bank & Trust of Memphis, First National Bank of Texas, First State Bank, and First United Bank. Additionally, Plaintiff — in its *supplemental briefing at 5* — notes two banks not indicated by Defendants: First Bank and Trust of Childress and First Bank and Trust with locations in Seymour, Laguna Park, Princeton, and Whitney. As stated by the Tenth Circuit, "[t]he greater the number of identical or *more or less similar marks already in use* on different kinds of goods, the less likelihood of confusion between any two specific uses of the weak mark." *First Sav. Bank*, 101 F.3d at 653–654 (emphasis added). Though the contested term is "FirstBank" — and these financial institutions use the words "first" and "bank" separately — these marks are sufficiently similar to deserve only weak protection. Therefore, this digit weighs heavily in Defendants' favor.

The second digit, the similarity of the two marks, weighs in Defendants' favor. Plaintiff claims "Defendant's adopted marks [] are nearly identical" to the marks used by Plaintiff.[15] The Court disagrees.

The marks, admittedly, both rely on the color green and include the term "FirstBank," but the similarities stop there. First, while Defendants use the term "FirstBank" as the dominant portion of the mark, Plaintiff does not. Both "FirstBank" and "Southwest" are displayed in equal size, with no greater attention drawn to FirstBank than Southwest. Second, while Plaintiff's mark features prominently a tree, Defendants' mark features three lightning-bolts as the only imagery. Third, while the name of Plaintiff's bank is featured beside the tree logo, Defendants incorporate

---

[15] Plaintiff's Supporting Brief for Preliminary Injunction at 12.

their lightning-bolts into the name of the bank, replacing the entire "F" and the dot over the "i" in "FirstBank." Fourth, these logos do not use a similar typeface. In addition to the font being distinguishable, Defendants' mark heavily emphasizes the capital letters by making the capitals disproportionate to the under-case letters. Even relying on the "subjective eyeball test," the Court believes an average observer could easily distinguish the marks from each other. Fifth, and lastly, because color is not an inherently distinctive quality of a mark,[16] the shared use of green in the marks — the color of money — is hardly persuasive. Not only does this element weigh in favor of Defendants, but it does so heavily.

The sixth digit: Defendant's intent. Plaintiff alleges that Defendants adopted their marks with full knowledge of Plaintiff's marks. Plaintiff's Reply at 12. This is plainly insufficient to show intent to infringe on a mark. *Firebirds International, LLC v. Firebird Restaurant Group, LLC*, 397 F. Supp. 3d 847 (N.D. Tex. 2019) (finding defendants may have been aware of the trademark before adopting and using the allegedly infringing mark, "but awareness of plaintiff's mark, coupled with continued use of after awareness, was not sufficient to establish bad intent."). Plaintiff is correct that a showing of intent to confuse is not necessary to prove likelihood of confusion because this is a holistic test.[17] But to suggest that this digit weighs in favor of Plaintiff would be erroneous.

Only two digits favor a likelihood of confusion. The first of these is digit eight: the degree of care exercised by potential purchasers. While some patrons of financial institutions may exercise heightened care, most are ordinary purchasers who are not likely to exercise care in distinguishing between two trademarks. *See In re 1st USA Realty Professionals, Inc.*, 84 U.S.P.Q. 2d 1581 (T.T.A.B. 2007). This digit, however, weighs only slightly in the favor of Plaintiff because

---

[16] *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 162–163 (1995).
[17] Plaintiff's Reply at 12.

the degree of care must itself be considered against the similarity of the marks. Where the marks are very similar, the degree of care is highly relevant. Where, as here, sufficient differences exist between the marks, less care is necessary for a potential purchaser to distinguish between the marks. As a result, this digit only slightly favors likelihood of confusion.

The second digit which favors a likelihood of confusion is digit seven: actual confusion. In a trademark infringement action, the best evidence of likelihood of confusion is actual confusion. *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 483 (5th Cir. 2008). In most cases, little proof of actual confusion is necessary to prove the likelihood of confusion. *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971).

In this case, Plaintiff alleges numerous instances of confusion. Plaintiff's Supplemental Brief at 17. In a vacuum, these instances could be construed as definitive proof of confusion. But the Fifth Circuit has on several occasions declined to find a substantial likelihood of confusion even though actual confusion existed. *See, e.g.*, *First Southern Fed. Sav. v. First Southern Sav.*, 614 F.2d 71 (5th Cir. 1980); *see also Sun Banks of Fla.*, 651 F.2d at 311. This is because the Fifth Circuit has adopted an additional standard for weighing actual confusion. "Evidence of confusion should be given appropriate consideration. In determining the likelihood of confusion, however, a court should consider all the evidence, *including countervailing circumstances* which lessen the impact of asserted instances of confusion." *Id.* at 319 (emphasis added).

Applying that standard here, the otherwise weighty impact of actual confusion is lessened by the quantity of incidents of confusion compared with the overall number of transactions. *Id.* (finding "in light of the number of transactions conducted . . . the amount of past confusion is negligible."). In this case, it is not clear precisely how many transactions each bank conducted

*without* confusion after Defendants renamed the acquired AimBank locations. With each bank's significant number of locations in the Texas Panhandle, this number is surely significant, mitigating the impact of the relatively few alleged instances of confusion.

Second, the otherwise weighty impact of actual confusion is lessened by quality of the incidents of confusion. In *Sun Banks*, the Fifth Circuit found against likelihood of confusion because none of the incidents of confusion concerned "a potential customer considering whether to transact business with one or the other of the parties" or "by a potential customer concerning the transaction of business." *Id*. at 319. Similarly, in *Citizens National Bank of Meridian*, the court found that the numerous instances of confusion had "little bearing on the likelihood of relevant confusion" because few of the events concerned "potential customers concerning the transaction of business." 157 F. Supp. 2d at 720–21.

Based upon Plaintiff's description of all incidents of confusion, the impact of the incidents of confusion is severely limited by their quality and quantity. None of the instances of alleged confusion related to a customer choosing their financial services institution. Rather, each instance of alleged confusion concerned an existing customer or vendor of either Plaintiff or Defendants. And there is no evidence to suggest any of these customers became patrons of a rival bank after these instances. Further, as noted by Defendants, none of the incidents were particularly disruptive as each "was resolved with a simple conversation." Defendants' Supplemental Brief at 9. In sum, although this digit of the likelihood of confusion analysis weighs in favor of Plaintiff, it does so unconvincingly.

Consequently, the Court finds the public is not likely to be confused by the marks and Plaintiff therefore lacks a substantial likelihood of success on the merits. Discussing the three

remaining elements necessary for a preliminary injunction to be granted is unnecessary. For completeness though, a brief examination of these three elements will follow.

### B. Substantial Likelihood of Irreparable Harm

Plaintiff's primary argument regarding irreparable harm relies on Section 34(a) of the Lanham Act which requires a presumption of irreparable harm upon a finding of likelihood of success on the merits. Plaintiff's Reply at 8. Because Plaintiff's argument on this matter is integrally linked to the success of their arguments regarding likelihood of success, and because this Court was unpersuaded by those arguments, it is unnecessary to analyze whether the Lanham Act requires this presumption.

### C. Balance of the Harms

Even presuming there is an injury suffered by Plaintiff, this injury is outweighed by the injury which will be suffered by Defendants if the preliminary injunction is granted. The injury suffered by Defendants is not only large, but it is effectively permanent, requiring the bank to be injured for a second time to undo the effects of an injunction.

If Defendants are no longer permitted to use the term "FirstBank" and are required to change their mark, this will come at great cost to Defendants. This cost will be both immediate and persistent. There will be immediate financial and technical costs associated with the logistics of renaming the banks in the Texas Panhandle and redesigning all materials with the current mark. There will also be a persisting injury in the form of lost goodwill: Defendants' panhandle locations would have a new name which does not share the reputation of Defendants' preexisting locations.

Further, the spread of brand awareness into the Texas Panhandle was a motivating consideration in Defendants' acquisition of the AimBank locations. Without the ability to create awareness for Defendants' brand, the locations will be worth less than Defendants thought upon

acquisition. These injuries outweigh the alleged injury — loss over control of the bank's good name — that Plaintiff avers is presumed by the Lanham Act on a showing of substantial likelihood of success on the merits.

As a final note on the balance of the harms, if the preliminary injunction were to be issued and then the case decided in favor of the defense — or the matter settled out of court — these costs would likely be incurred by Defendants twice over: once to come into compliance with the injunction, and then once again to realign their Panhandle locations with the remainder of Defendants' locations. The costs associated with again renaming the Panhandle locations may have the effect of making the preliminary injunction a permanent injunction, which propounds the prudence of not issuing a preliminary injunction. *See, e.g.*, *Defense Distributed v. U.S. Dep't of State*, 838 F.3d 451, 459–460 (5th Cir. 2016).

### D. Public Interest

The public interest in this matter does not particularly favor either party. As a result, it cannot be said that a preliminary injunction would favor the public interest. While there will likely be some confusion of the public if Defendants change the marks on their Panhandle locations, this confusion will be temporary. Compared to the minimal actual confusion Plaintiff alleges is occurring, the public interest is not served by issuance of a preliminary injunction. Similar to the balance of the harms, however, if a preliminary injunction were issued and then this case's ultimate decision favored Defendants — or the matter is settled — the public would not be served. Defendants' Panhandle customers would be confused by the change of name, potentially confused by a second change of name, and allegedly — according to Plaintiff — confused a third time by both parties' banks utilizing the term "FirstBank." It is important to consider the difference between how the public interest will be served by a permanent injunction versus a *preliminary*

injunction. Here it is unclear and unlikely to favor either party. Therefore, Plaintiff is unable to meet their burden to receive a preliminary injunction.

CONCLUSION

Because Plaintiff has failed to demonstrate convincing evidence of substantial likelihood of success on the merits, substantial likelihood of irreparable harm, that the balance of harms favors a preliminary injunction, and that the public interest favors a preliminary injunction, Plaintiff has failed to satisfy each of the four *Winter* factors for preliminary injunction. Consequently, the Court **DENIES** Plaintiff's motion for a preliminary injunction without prejudice to Plaintiff's ability to continue to prosecute its underlying case against Defendants.

**SO ORDERED.**

August 24, 2021

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE